**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **RACHEL LYNN CANNADY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-00609-HFS |
| | ) | |
| **HY-VEE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S MOTION FOR SANCTIONS BASED ON SPOLIATION OF EVIDENCE AND SUGGESTIONS IN SUPPORT

In this case, Plaintiff claims that her supervisor, Mitchell Simmons, made advances toward her and that, when she rejected them, he began mistreating her to the point that she was forced to resign. In connection with her allegations, Plaintiff points to two phone calls she had with Mr. Simmons during which he asked her to have drinks. Her testimony has varied, but in some places, Plaintiff has indicated that Mr. Simmons asked her to come to his house for drinks because his wife was out of town. Mr. Simmons does not deny offering to have drinks with Plaintiff on one occasion but denies inviting her to his house. At the time Plaintiff filed her charge of discrimination, according to her own testimony, **she had recordings of those calls**, as well as numerous other calls with Mr. Simmons and other Hy-Vee employees. After deciding to pursue litigation against Hy-Vee, Plaintiff actively chose to preserve certain electronic evidence but chose not to preserve those crucial recordings.

In addition, during the time Mr. Simmons was her boss, Plaintiff exchanged more than 500 text messages with him. Again, after deciding to pursue litigation against Hy-Vee, Plaintiff actively took steps to preserve certain text messages she exchanged with other employees, and those text messages date back to August 2017, yet **Plaintiff did not preserve *any* of the text**

**messages with Mr. Simmons.** Instead, after preserving the text messages she wanted to save, she traded in her phone, thereby destroying those messages.

Finally, Hy-Vee's position is that Mr. Simmons did not treat Plaintiff any differently than he treated other employees, and Mr. Simmons' attitude toward Plaintiff did not abruptly change. The text messages that Plaintiff did produce illustrate that she frequently communicated with her co-workers about Mr. Simmons and the complaints that she and others had about him. Nonetheless, Plaintiff destroyed hundreds of text messages she had with Irene Petrucci, Cale Suppes, and Anna Cook (among others) - three co-workers with whom she routinely corresponded. Hy-Vee strongly believes those text messages would further illustrate that Mr. Simmons treated Mr. Suppes, Ms. Cook, and others the same way he treated Plaintiff and that there was no abrupt change in Mr. Simmons' attitude toward Plaintiff.

Because Plaintiff blatantly ignored her preservation requirements and destroyed thousands of text messages, as well as important phone recordings, Hy-Vee has been severely and irreversibly prejudiced. For that reason, Hy-Vee hereby moves for sanctions against Plaintiff Rachel Cannady due to her destruction of material evidence. As more fully described below, during the pendency of these proceedings – including a time after Hy-Vee served discovery requests seeking the very information she destroyed – Plaintiff discarded her cell phone that included text messages and phone call recordings that were directly related to her claims and Hy-Vee's defenses in this action. Before discarding her phone, Plaintiff cherry-picked for saving only certain communications. As a result of Plaintiff's unabashed destruction of key evidence, Hy-Vee has been substantially prejudiced in its ability to defend against Plaintiff's claims.

As explained more fully below, if there is any clear-cut case of spoliation, it is this one. Hy-Vee, accordingly, requests the Court award it spoliation sanctions against Plaintiff, including

summary judgment/dismissal, or alternatively, an adverse inference/instruction, as well as its attorneys' fees and costs for preparing this motion.

## I. RELEVANT FACTUAL BACKGROUND.

Hy-Vee has detailed Plaintiff's claims and some of the facts surrounding those claims in its Suggestions in Support of its Motion for Summary Judgment. Hy-Vee incorporates those Suggestions by reference and will not repeat all of the relevant detail here.

In short, Plaintiff began her employment with Hy-Vee in December 2011 as a Kitchen Clerk, and then transferred to the Bakery Department in June 2017 where she worked until she voluntarily resigned in June 2018 after she found a new job. After submitting her resignation, Plaintiff continued to work for Hy-Vee part-time as a Salad Bar Clerk until she quit in September 2018. Mitch Simmons was the Bakery Manager and Plaintiff's supervisor from July 2017 forward.

On October 17, 2018, Plaintiff filed a Charge of Discrimination against Hy-Vee asserting claims of sexual harassment, gender discrimination, and retaliation. Specifically, Plaintiff claims that Mr. Simmons treated her well and was grooming her to be a Bakery Manager until an incident in late March/early April of 2018. Plaintiff claims that in that timeframe, she was talking to Mike Moore, the Kitchen Manager, and Plaintiff's former supervisor. After Mr. Moore walked away, Mr. Simmons allegedly asked Plaintiff if she hooked up with all her bosses. Plaintiff told Mr. Simmons she did not. According to Plaintiff, after that day, Mr. Simmons suddenly changed his attitude toward her, began unfairly criticizing her, and ultimately constructively discharged her.

In support of her theory that Mr. Simmons' behavior toward her changed after she allegedly rejected him, Plaintiff points to two phone conversations with Mr. Simmons where she claims he asked her to have drinks with him, including one conversation where he allegedly asked her to come to his house because his wife was out of town. Plaintiff claims these phone conversations

3

illustrate Mr. Simmons' desire to have a sexual relationship with her.

Plaintiff filed this lawsuit against Hy-Vee on June 16, 2019, and discovery commenced shortly thereafter. On September 6, 2019, Hy-Vee served its First Requests for Production of Documents ("Requests") to Plaintiff. Exhibit 1. In those Requests, Hy-Vee specifically asked Plaintiff for "[a]ll communications, **including** emails and **text messages**, concerning your claim that Defendant discriminated or retaliated against or harassed you." *Id.* at Request No. 5 (emphasis added). Hy-Vee also requested: "All photographs, **audio and video recordings** which relate to or support your claims against Defendant." *Id.* at Request No. 9 (emphasis added). Additionally, pursuant to Fed. R. Civ. P. 26, Hy-Vee's initial discovery requests instructed Plaintiff that she must make a diligent search of her records in her possession, that the Requests were continuing in nature, and that she was under a continuing obligation to supplement her responses upon receiving additional responsive information or documents. *Id.* at p. 3.

On October 17, 2019, Plaintiff responded to Hy-Vee's Requests and produced some, but not all, responsive text messages. Specifically, she produced portions of texts with Irene Petrucci and Cale Suppes, two employees who worked in Bakery. Notably, she did not produce a single text message with Mitch Simmons. She also did not produce a single audio recording.

On June 10, 2020 and continuing on July 8, 2020, Hy-Vee deposed Plaintiff. In her deposition, Plaintiff testified that during her employment with Hy-Vee, she had an app called Call Recorder on her cell phone, and the app recorded and saved all of her phone calls. Exhibit 2, Pltf's depo. 278:19-25. The recordings are accessible from the phone used for the call. *Id*. at 279:6-18. The recordings do not transfer to new phones. *Id.* at 279:3-14. At the time Plaintiff took the screen shots of *some* text messages in October 2018, she still had the same phone she had in early 2018. *Id.* at 280:6-21.

Plaintiff got a new phone in October 2019 and traded in her old phone. *Id.* at 13:18-14:1. When she got a new phone at that time, she backed up "some of the stuff" on her old phone *Id.* at 15:13-17, but she no longer has access to the recordings. *Id.* at 277:19-281:1.[1] Plaintiff never backed up her old cell phone to a computer. *Id.* at 123:9-11. Similarly, she has no access to the text messages that she did not choose to screen shot in October 2018. *See, e.g.*, *id.* at 127:21-128:2, 131:9-12, 145:13-15, 188:7-8, 197:7-11.

To date, Hy-Vee remains in the dark about the full extent of Plaintiff's communications with former and current Hy-Vee employees because Plaintiff admittedly destroyed responsive text messages and phone call recordings, while choosing to preserve only certain messages.

## II. SPOLIATED TEXT MESSAGES AND PHONE CALL RECORDINGS.

Plaintiff destroyed the following evidence after she knew she planned to assert claims against Hy-Vee alleging that Mitch Simmons sexually harassed her, began mistreating her after she rejected his alleged advance, and intentionally forced her to resign. This destruction also occurred after Hy-Vee had served discovery requests in this case. The evidence destroyed includes:

- More than 500 text messages between herself and Mitch Simmons.
- More than 100 phone calls with Mitch Simmons.
- Hundreds of text messages with Irene Petrucci, Cale Suppes, Anna Cook, and others.

*See* Exhibit 3.[2]

In addition, Plaintiff – who has asserted a constructive discharge claim – testified that she had text message communications with Hy-Vee employees that discussed her departure from Hy-Vee. Ex. 2, Pltf's depo. 41:16-18, 42:10-18, 214:3-8. Yet, Plaintiff did not produce those text

---

[1] Hy-Vee attempted to obtain the recordings from the owner of the Call Recorder App but was unable to do so.
[2] Exhibit 3 is an excerpt of Plaintiff's phone records. The actual phone records are more than 54,000 lines long. If the Court would like to review the records as a whole, Hy-Vee is happy to provide them.

messages.

Plaintiff's phone records also show the following:

- On January 19, 2018, the day Plaintiff's nephew died, she exchanged five texts with Mr. Simmons and had a 58 second call.

- On January 20, 2018, she exchanged five texts with Mr. Simmons and had a one minute and 25 second call.

*See* Ex. 3. Plaintiff claims one of these calls is the call where Mr. Simmons inappropriately asked her to have drinks, yet she did not preserve the phone calls or text messages from that day. Plaintiff also claims Mr. Simmons invited her for drinks on another phone call later in time and that, on one of these calls, Mr. Simmons invited Plaintiff to his house. Mr. Simmons denies this. If Plaintiff had complied with her preservation obligation, there would be no dispute.

- On March 10, 2018, Plaintiff had a call with Mr. Simmons that lasted over nine minutes.

- On March 14, 2018, they had a call that lasted over five minutes.

- On March 15, 2018, they had a call that lasted over four minutes.

- Plaintiff and Mr. Simmons had regular text messages throughout January, February, March, and April 2018 (and beyond).

In this case, Plaintiff claims that Mr. Simmons abruptly changed his demeanor toward her after the day Mr. Simmons allegedly asked Plaintiff if she hooked up with all her bosses. Plaintiff's testimony varies on when that allegedly occurred, but if we had these phone calls and text messages, we could see for ourselves whether there was an abrupt change in attitude.

- Plaintiff had two phone calls with Mr. Simmons on May 1, 2018. One of them lasted over two minutes. The other lasted over nine minutes.

6

- Plaintiff had a call with Mr. Simmons on May 6, 2018 that lasted more than 20 minutes.

*See* Ex. 3. As discussed in Hy-Vee's Summary Judgment briefing, Plaintiff claims that Mr. Simmons and Mr. Eslick met with her on April 30, 2018 in response to Plaintiff's complaint to Jeff Sesker. This May timeframe is also right in the heart of the time period Plaintiff claims Mr. Simmons was mistreating her. Yet, she did not save the lengthy calls she had with him.

- Plaintiff and Mr. Simmons exchanged text messages on several days when Plaintiff also claims to have taken notes of the day's events. These include March 6, March 18, April 15, and May 26.

- Plaintiff and Mr. Simmons had a call that lasted over a minute on March 18.

*See* Ex. 3. Hy-Vee strongly suspects that the notes Plaintiff produced in this case were fabricated, in whole or in part, after the fact. In addition, there is only a single note that even hints at sexual harassment, and that note is not attached to the rest of the notebook. If we had the text messages she and Mr. Simmons exchanged on the very days Plaintiff claims she took notes, and if we had the phone call from one of those days, we may well have additional evidence supporting Hy-Vee's theory.

- Plaintiff had 11 texts with Mr. Simmons in June 2018. *See* Ex. 3.

In this case, Plaintiff claims Mr. Simmons' behavior was so horrible that it forced her to resign. All of these June 2018 text messages occurred after Plaintiff had allegedly been forced to leave the Bakery. They would undoubtedly shed light on the veracity of Plaintiff's constructive discharge claim.

Beyond that, Plaintiff had more than 100 phone calls and 450 text messages with Anna Cook between October 2017 and March 2018. *See* Ex. 3. As discussed in Hy-Vee's Motion, Ms. Cook complained about Mr. Simmons' management style to Store Director, Jeff Sesker, and

Human Resources Manager, Aimee Douthit in February 2018. Plaintiff was interviewed as part of the investigation on February 10, 2018. On that same day, Plaintiff talked with Ms. Cook by phone. Plaintiff and Ms. Cook also exchanged several text message the day before Plaintiff was interviewed as part of the investigation into Ms. Cook's complaint. Plaintiff also had hundreds of text messages with Irene Petrucci and Cale Suppes that she did not produce. *See* Ex. 3. These occurred throughout Plaintiff's tenure in the Bakery and would undoubtedly illustrate whether Mr. Simmons behavior was aimed only at Plaintiff and whether there was a change in Mr. Simmons' behavior, as Plaintiff now claims.

In addition to destroying evidence altogether, the text messages Plaintiff did preserve and produce often do not contain the full text message and often do not include the text messages before or after the message Plaintiff retained. In some cases, the screenshot does not provide a date. By way of illustration:

| SENDER/RECIPEINT | DATE | MESSAGE |
|---|---|---|
| Plaintiff and Irene Petrucci | Unknown | "You missed the good stuff! Jeff called Mitch into the office and then me and then cale mostly … [TEXT MESSAGE CUT OFF]." <br><br> Ex. 4, CANNADY 4. |
| Plaintiff and Irene Petrucci | Unknown | Plaintiff texts Petrucci but the content is entirely cut-off. Petrucci responds: "He does stress people out. He's not organized and his 'bed side manner' is rough. Do not get me wrong- I like Mitch, I just think he has a long way to go before he is a well rounded manager." <br><br> Ex. 4, CANNADY 4. |
| Plaintiff and Cale Suppes | 10/29/2018 | Plaintiff: "Would you wanna come with me to my lawyers with me on Friday?" <br><br> Suppes: "See I want to, I want to help you in any way I can. But at the same time I think I'm gonna be with hyvee for the long run and I'm just worried |

| SENDER/RECIPEINT | DATE | MESSAGE |
|---|---|---|
| | | about how that would affect me working there [emoji]."<br><br>Plaintiff: "You don't have to go in front of a judge and do anything like my lawyer just wants to talk to you you don't have to testify against anybody in court he just wants to get your testimony on paper in case we need it he's not ev[CUT OFF] sure that were going to need [CUT OFF]…"<br><br>Plaintiff did not produce Mr. Suppes' response or any further texts in this conversation.<br><br>Ex. 5, CANNADY 188. |
| Plaintiff and Cale Suppes | Unknown | Plaintiff: "Wtf lol he has got me all confused, he said my hours after this last scheduled would be 10-6;hes retarded!!!! This dude is fucking high I swear lol he never remembers shit."<br><br>Suppes: "Yeah no kidding wtf does me coming 15 min later accomplish? I thought he wanted us out early"<br><br>The screenshot shows Plaintiff responded at 9:12 PM, but that message is entirely cut-off.<br><br>Ex. 6, CANNADY 189. |
| Plaintiff and Irene Petrucci | 5/25/2018 | Plaintiff: "Did he talk to anyone about having overtime? Bcuz the first thing he did when he seen me was rip my ass for having overtimee."<br><br>There is another message from Plaintiff right after this but it is entirely cut-off.<br><br>Ex. 7, CANNADY 15. |

### III. ARGUMENT.

#### A. Legal Standard for Spoliation of Evidence.

Spoliation of evidence occurs where there is an "intentional destruction [of evidence] indicating a desire to suppress the truth." *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746

(8th Cir. 2004); *see also Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) ("The ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation."). "Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004). Courts are "required to consider whether the destruction of a record was a made in circumstances where the party "knew or should have known that the documents would become material." *EEOC v. New Prime, Inc.*, 42 F. Supp. 3d 1201, 1219 (W.D. Mo. 2014) (internal citations omitted).

Courts have "inherent power and discretion 'to fashion an appropriate sanction for conduct which abused the judicial process.'" *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). Sanctions should be imposed where there is a finding of intentional destruction indicating a desire to suppress the truth. *Stevenson*, 354 F.3d at 746.

Where, as here, a party destroys evidence after litigation commenced, a court may impose sanctions, even absent a showing of bad faith. *See Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010); *see also Stevenson*, 354 F.3d 739 (finding adverse instruction appropriate absent showing of bad faith where records were destroyed during litigation and during discovery). As detailed above, Plaintiff has engaged in self-help discovery by preserving only select text messages and failing to preserve her personal cell phone, which contained critical evidence in this case. Plaintiff's flagrant abuse of the discovery process warrants sanction.

**B. The Court Should Award Sanctions Against Plaintiff for her Engaging in Spoliation.**

**1. Dismissal of Claims Is Appropriate.**

In appropriate circumstances, a court may dismiss some or all of a plaintiff's claims based upon spoliation of evidence. Dismissing a party's claims as a sanction for spoliation of evidence is appropriate upon a "finding of intentional destruction to suppress the truth." *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006) (citing *Stevenson*, 354 F.3d at 746). "When the facts show willfulness and bad faith, the selection of a proper sanction, including dismissal, is entrusted to the sound discretion of the district court." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 927 (8th Cir. 2014) (affirming district court's conclusion that dismissal was warranted because "Defendants could not obtain a fair trial without the missing information.").

Dismissal can be imposed as a sanction where there is a showing of prejudice and bad faith. *Sentis*, 763 F.3d at 924 n.1. "Such prejudice may arise, not just from an indication that the destroyed recording could be classified 'as a smoking-gun,' but from 'the very fact that it is the only recording of' the incident in question." *Rattray v. Woodbury Cty*, 761 F. Supp. 2d 836, 846 (N.D. Iowa 2010) (citing *Stevenson*, 354 F.3d at 747)). Here, Plaintiff points to two important phone calls to support her theory that Mr. Simmons was attempting to have a relationship with her. Plaintiff destroyed the only recordings of those calls, while intentionally saving other evidence. Although dismissal is an "extreme sanction," Plaintiff's deliberate act of destroying material evidence constitutes intentional spoliation and justifies the harshest remedy. The Court does not need to consider a less extreme sanctions when, as here, there is a showing of willfulness and bad faith. *See Hairston v. Alert Safety Light Prods.*, 307 F.3d 717, 719 (8th Cir. 2002).

There is no question that Plaintiff intentionally discarded her old cell phone to suppress the truth. As explained above, the evidence Plaintiff destroyed contained text messages and phone call

recordings, which detailed highly relevant communications about the way Mr. Simmons treated her (and other employees). Perhaps most critically, the crux of Plaintiff's sexual harassment claim stems from Mr. Simmons' phone calls to Plaintiff where, according to Plaintiff, Mr. Simmons offered to have a drink with her at his house while his wife was out of town. Significantly, despite having these original text messages in full and phone call recordings on her phone at the time she filed her Charge and after Hy-Vee served discovery requests to her, she actively chose not to save or provide the full text messages and chose not to save a single phone call recording.

Unquestionably, Hy-Vee has been prejudiced by Plaintiff's conduct. Plaintiff alleges that her manager, Mitch Simmons, called her cell phone and asked her out for drinks when his wife was out of town. Plaintiff claims that after she rejected Mr. Simmons' alleged coming on to her, her treated her negatively and her working conditions were so intolerable that she was forced to quit her employment with Hy-Vee. Hy-Vee's defenses in this matter largely depend on the ability to demonstrate that Mr. Simmons did not sexually harass Plaintiff or treat her any differently because of her gender. The hundreds of text messages and phone recordings would provide the jury with invaluable and inimitable insight into Plaintiff's relationship with Mr. Simmons, and Mr. Simmons' relationship with other Hy-Vee employees, including Cale Suppes and Anna Cook.

Plaintiff intentionally deleted certain text messages. It can only be assumed Plaintiff did so for one reason: the text messages and recordings would demonstrate that Mr. Simmons did not subject Plaintiff to any sexual harassment or gender-based discrimination during her employment.

Plaintiff had the requisite culpable state of mind at the time she destroyed her personal cell phone where she acted willfully and made no effort to preserve the data the device held and did not contact her counsel to inquire whether they should keep the data. This is not a case of mere ordinary negligence as Plaintiff knew she had an affirmative duty to preserve when she filed her

Charge of Discrimination in October 2018 and then subsequently filed her lawsuit in June 2019. Indeed, Plaintiff was represented at the time she destroyed the evidence.

At a minimum, Plaintiff was aware of her discovery obligations when Hy-Vee sent discovery requests to Plaintiff in September 2019. Despite this, Plaintiff affirmatively chose to destroy that evidence through a series of decisions and actions calculated to prevent Hy-Vee from accessing this information. Accordingly, it is apparent Plaintiff had a culpable state of mind when she destroyed her cell phone.

### 2. Alternatively, Drawing of Adverse Inference Instruction Is Appropriate.

Available sanctions for spoliation of evidence also include drawing an adverse inference from the Plaintiff's destruction of material evidence. Often this occurs in the context of a jury instruction. If this case survives summary judgment, at a minimum, Hy-Vee is entitled to an adverse inference instruction. *See Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 879 (8th Cir. 2015) (internal citations omitted).[3] But given Plaintiff's conduct, the adverse inference should attach before that – in connection with Hy-Vee's Summary Judgment Motion.

Plaintiff's destruction of text messages and phone call recordings, despite her knowledge that they would be materially relevant to this lawsuit, is inexcusable and warrants, at a minimum, an adverse inference.[4]

### 3. The Court Should Also Order Plaintiff to Pay Hy-Vee its Attorneys' Fees and Costs for this Motion.

Plaintiff's willful and bad faith spoliation of evidence merits an award of monetary sanctions to punish Plaintiff's prior conduct and deter future misconduct. Courts have "inherent

---

[3] Hy-Vee intends to file another motion related to an adverse inference jury instruction if the case is tried.
[4] As discussed in Hy-Vee's Suggestions in Support of its Motion for Summary Judgment, even viewing the facts in the light most favorable to Plaintiff, Hy-Vee is entitled to judgment as a matter of law. The conclusion is even more obvious if Hy-Vee gets the benefit of an adverse inference.

power to award attorneys' fees as a sanction." *Stevenson*, 354 F.3d at 746 (citing *Lamb Eng'g & Constr. Co. v. Neb. Pub Power Distr.,* 103 F.3d 1422, 1434-45 (8th Cir. 1997)). Given the above, there can be no doubt that Plaintiff spoliated materially relevant evidence in this case. As such, Hy-Vee requests that it be awarded monetary sanctions for its reasonable attorneys' fees and costs incurred in preparing this motion.

### IV. CONCLUSION.

For the foregoing reasons, Hy-Vee respectfully requests the Court dismiss Plaintiff's claims in their entirety based on her intentional spoliation of evidence. Alternatively, Hy-Vee requests the Court enter an order granting an adverse inference that the text messages and phone call recordings would be harmful to her case. Finally, Hy-Vee requests the Court order Plaintiff to pay for Hy-Vee's costs and attorneys' fees incurred related to this Motion.

Respectfully submitted,

*/s/ Jeannie M. DeVeney*
Jeannie M. DeVeney, MO #46885
Jennifer A. Schorgl, MO #71159
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
jdeveney@littler.com
jschorgl@littler.com

ATTORNEYS FOR DEFENDANT
HY-VEE, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that November 12, 2020, a true and correct copy of the foregoing was electronically submitted via the Court's e-filing system, which generated notice of same to the following counsel of record:

    David A. Lunceford
    Rachel C. Rutter
    LUNCEFORD LAW FIRM, LLC
    201 S.E. First Street
    Lee's Summit, MO 64063
    llf.dlunceford@gmail.com
    Rutter.c.rachel@gmail.com

    ATTORNEYS FOR PLAINTIFF

    */s/ Jeannie M. DeVeney*
    ATTORNEY FOR DEFENDANT